UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALMA LASERS, INC., a Delaware corporation,
                                    Plaintiff,

                v.

AMRIT THANDI individually and d/b/a North Cypress
Family Practice,
                                    Defendant

23 CV 14604

Honorable Judge Shah

Magistrate Judge Kim

**ALMA LASERS, INC.'S RESPONSE TO AMRIT THANDI'S MOTION
TO DISMISS OR ALTERNATIVELY TO TRANSFER VENUE**

Defendant Amrit Thandi ("Defendant") moves this Court to dismiss Plaintiff Alma

Lasers, Inc.'s ("Plaintiff") complaint for failure to state a claim and for improper venue or

alternatively to transfer the case to Texas.  This Court should deny Defendant's motion (i)

because Plaintiff's complaint pleads a cause of action for breach of contract, (ii) because the

contract in dispute includes an enforceable forum selection clause exclusively vesting

jurisdiction and venue in the state and federal courts located in Chicago, Illinois, and (iii)

because this case has significant connection with this venue.

I.      **FACTS ALLEGED IN PLAINTIFF'S COMPLAINT.**

Plaintiff's complaint asserts a straight-forward breach of contract claim—*i.e.*, Plaintiff

and Defendant entered into a written contract for the sale of medical equipment, Plaintiff

delivered the equipment to Defendant, Defendant retained the equipment, and Defendant failed

to pay for it.  Specifically, Plaintiff alleges as follows:

Plaintiff is a Delaware corporation with its principal place of business in Downers Grove,

Illinois and therefore is a citizen of Delaware and Illinois and is present in this venue.  (Cmpl.

¶¶8-9)  Defendant is a citizen of Texas.  (Cmpl. ¶10)  On November 6, 2022, Plaintiff and

Defendant entered into the contract attached to Plaintiff's complaint which was signed by "Amrit

Thandi" as "MD / Owner." (Cmpl. ¶13) The "Customer/Company Name" on the contract was

"North Cyprus Family Practice." *Id.*[1] According to the contract, Plaintiff sold Defendant

medical equipment (including a Ted System and a Soprano Titanium system) and a warranty, and

Defendant also agreed to pay shipping charges and applicable sales tax. (Cmpl. ¶12) The

contract provides as follows:

> The Customer identified in this Quotation/Purchase Order ("Customer" or
> "Buyer") agrees to purchase the goods and/or services identified above (the
> "Products") pursuant to the terms of this Quotation/Purchase Order as well as
> the document entitled "ALMA LASERS, INC. TERMS AND CONDITIONS
> OF SALE AND LIMITED WARRANTY," which Buyer acknowledges having
> received and is incorporated herein by reference.

(Cmpl. ¶14) The contract's terms and conditions provide that the contract is governed by Illinois

law excluding conflicts of laws principles and that the state and federal courts located in

Chicago, Illinois are the <u>exclusive jurisdiction and venue</u> for any dispute:

> 17. Governing Provisions and Attorneys' Fees. THIS ORDER (INCLUDING
> THESE TERMS AND CONDITIONS) SHALL BE GOVERNED BY AND
> CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF ILLINOIS
> (WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS). …
> The Parties hereby consent to the exclusive jurisdiction and venue of the state and
> federal courts located in Chicago, Illinois, U.S.A. for the resolution of any disputes
> between them pertaining to this Order. Buyer hereby waives the right to contest
> the jurisdiction and venue of said courts located in Chicago, Illinois, U.S.A. If
> Alma must resort to legal action as a result of a breach by Buyer of any of the
> provisions of this Order, and if Alma proves to a court that Buyer has breached any

---

[1] As discussed below, Defendant argues that "North Cyprus Family Practice" was purportedly an assumed name of "Amrit Thandi MD P.A.," a name which appears nowhere on the contract. Defendant's attempt to dispute the allegations in Plaintiff's complaint is improper for a Rule 12(b)(6) motion where the allegations must be taken as true. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). It is also factually wrong because the Texas Secretary of State revoked Amrit Thandi MD P.A.'s charter and registration on October 7, 2022, more than a month before Dr. Thandi signed the contract. (Texas Secretary of State Forfeiture Pursuant to Section 171.309 of the Texas Tax Code of Amrit Thandi MD P.A., Oct. 7, 2022, EX. 1)

of the provisions of this Order, Alma shall be entitled to recover from Buyer its reasonable attorneys' fees and costs incurred in proving such breach.

(Cmpl. ¶17)

Defendant paid Plaintiff a $21,400 downpayment leaving a balance due of $210,255.01. (Cmpl. ¶19) Plaintiff shipped the equipment from its Buffalo Grove, Illinois facility on December 22, 2022, the equipment was delivered to Defendant on or about December 30, 2022, and the equipment was retained by Defendant since that time. (Cmpl. ¶¶19, 24, 25) Plaintiff invoiced Defendant on December 22, 2022 for the $210,255.01 balance due and payment was due on January 21, 2023. (Cmpl. ¶¶19, 26) Defendant failed to pay the amount due.[2]

In sum, Defendant purchased medical equipment from Plaintiff, the equipment was shipped from Defendant's Downers Grove headquarters, Defendant received the equipment, Defendant retained the equipment for more than a year, and Defendant failed to pay for the equipment.

## II.    ARGUMENT.

### A.  This Court Should Deny Defendant's Rule 12(b)(6) Motion To Dismiss Because Plaintiff's Complaint States A Cause Of Action.

Rule 8 only requires a complaint to state a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8. A motion to dismiss pursuant to Rule 12(b)(6) rests on whether the plaintiff has properly stated a claim. *Bell Atl.*

---

[2] Also as discussed below, Defendant contends that there was no contract because she was unable to obtain financing for the purchase. Again, this argument is improper for a Rule 12(b)(6) motion where the allegations must be taken as true. *NewSpin Sports, LLC*, 910 F.3d at 299. Although Plaintiff disputes that Defendant's performance is excused regardless of her ability to obtain financing, this argument is also wrong because Plaintiff received confirmation that Defendant had been approved for financing. (Decl. of A. Greer ¶¶5, 6, EX. 2) Contrary to Defendant's assertion in her motion that "Plaintiff was told by Defendant that the machine was unable to be purchased due to the lack of bank approval for her requested loan…" (Mot. at 5), Plaintiff disputes that it received any such notice. *Id.* ¶8.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp.*, 550 U.S. at 570; *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). In reviewing a motion to dismiss, a court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gaines v. BDO USA, LLP*, 2023 U.S. Dist. LEXIS 47350, *6 (N.D. Ill. Mar. 21, 2023) ((Kennelly, J.), *citing NewSpin Sports, LLC,* 910 F.3d at 299. The Court may consider the allegations in the complaint and the documents attached to the complaint. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018), *quoting Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Defendant moves this Court to dismiss Plaintiff's complaint and in so doing improperly relies upon disputed facts outside the allegations of the complaint itself, which is wholly inappropriate for a Rule 12(b)(6) motion to dismiss. *NewSpin Sports, LLC,* 910 F.3d at 299. Defendant submits numerous declarations and other documents in support of her motion to dismiss. However, at this stage of the proceedings, this Court may not consider affidavits and other documents that purport to contradict the allegations in the Complaint. *Dalton v. Sweet Honey Tea, Inc.*, 2023 U.S. Dist. LEXIS 213138, *10 (Maldonado, J.). These documents should be stricken. *Id.*[3]

Taken as true, the allegations in Plaintiff's complaint state a cause of action for breach of contract. The elements of a claim for breach of contract are (1) the existence of a valid and

---

[3] Plaintiff has separately moved to strike these improper, extraneous materials.

4

enforceable contract; (2) substantial performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Avila v. CitiMortgage, Inc*., 801 F.3d 777, 786 (7th Cir. 2015), *citing W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 814 (Ill. App. Ct. 2004).

Defendant only disputes the first element of Plaintiff's claim, namely, whether there is an enforceable contract. Defendant does this two ways: first by arguing that Defendant is not party to the contract and second by arguing that a condition of Defendant's performance was not satisfied. Both of Defendant's arguments dispute allegations in Plaintiff's complaint and both arguments depend on facts outside the complaint, so neither argument is proper under Rule 12(b)(6). Moreover, both arguments are just wrong.

### (1) Defendant's Contention That She Is Not The Correct Party To the Contract Is Not A Basis For A Rule 12(b)(6) Motion, And It Is Untrue.

Defendant first asserts that the wrong party is named in the lawsuit. Defendant contends that she was incorporated under "Amrit Thandi MD PA" and that her corporation "runs North Cypress Family Practice." (Mot. at 8) Defendant's assertions rely upon affidavits and documents outside the allegations of the complaint which should be stricken. *Jacobs v. City of Chicago*, 215 F.3d 758, 765-66 (7th Cir. 2000) (when a party seeking dismissal under Rule 12(b)(6) submits materials outside the pleadings, such as an affidavit, the court must either exclude the materials or convert the motion to one for summary judgment). This is not a proper basis to challenge the complaint under FRCP 12 at this stage of the proceedings, and it is also untrue for several reasons.

First, Plaintiff alleges that Defendant signed the contract as "Dr. Amrit Thandi" and that "North Cypress Family Practice" was a fictitious name used by Defendant.

| Authorized Customer Name: | Dr. Amrit Thandi | Title: | MD / owner |
|---|---|---|---|
| Authorized Customer Signature: | *Amrit Thandi* | Date: | 11/6/22 |

(Cmpl. ¶13)  These allegations must be taken as true.  *NewSpin Sports, LLC, supra.*  For this

reason, Defendant's motion lacks merit and should be denied.

Second, the corporate entity Amrit Thandi MD P.A. does not appear anywhere on the

contract signed by Defendant and therefore Defendant is bound by the contract.  "[W]here an

agent signs a contract in his own name and the contract nowhere mentions the existence of an

agency or the identity of the principal, parole evidence is not admissible to denounce the agent's

personal liability."  *Bank of Pawnee v. Joslin*, 166 Ill. App. 3d 927, 935, 936 (4th Dist. 1988)

(holding that the signor of a promissory note that did not clearly identify that the signor was

signing on behalf of the Village of Pawnee was personally liable on the promissory note); *84

Lumber Co. v. Denni Construction Co.*, 212 Ill. App. 3d 441, 443 (5th Dist. 1991) (holding the

principal of a corporation was personally liable on a credit application because he signed in his

individual capacity "without more," *i.e.*, without clearly designating that he was signing on

behalf of the corporation).  Nowhere does the contract identify "North Cypress Family Practice"

as the assumed name of Amrit Thandi MD P.A.; the only other name on the contract is Amrit

Thandi personally.  For this reason, too, Defendant's motion should be denied.

Third, Defendant contends that she was incorporated under "Amrit Thandi MD PA," but

that was not true on November 6, 2022 when she signed the contract.  On October 7, 2022, the

Texas Secretary of State issued a "Forfeiture Pursuant to Section 171.309 of the Texas Tax Code"

to Amrit Thandi MD P.A. advising the entity that "the Secretary of State hereby forfeits the

charter, certificate or registration of the taxable entity as of the date noted above and records this

notice of forfeiture in the permanent files and records of the entity." (Texas Secretary of State Forfeiture Pursuant to Section 171.309 of the Texas Tax Code of Amrit Thandi MD P.A., Oct. 7, 2022, EX. 1) Because Amrit Thandi MD P.A. had failed to pay amounts due to the Comptroller of Public Accounts, its charter and certificate of registration were forfeited prior to the execution of the contract. Consequently, on November 6th Defendant was not signing the contract on behalf of a non-existent corporate entity, she was signing the contract in her individual capacity.[4]

Fourth, even if the Court were to consider the extraneous materials submitted by Defendant purporting to show that "North Cypress Family Practice" was a fictitious name of the forfeited entity Amrit Thandi MD P.A., this is not supported by the Texas Secretary of State online corporate records. According to the online records of the Texas Secretary of State, the corporate entity Amrit Thandi MD P.A. does not have any registered assumed name. (Texas Secretary of State Online Records for Amrit Thandi MD P.A., EX. 3 ("ASSUMED NAMES No Names for this filing").

In sum, Defendant is a party to the contract.

> **(2) Defendant's Contention That The Contract Was Contingent And That She Could Not Obtain Financing Is Not A Basis For A Rule 12(b)(6) Motion, And It Is Untrue.**

Defendant next asserts that the Court should dismiss Plaintiff's complaint because the contract was "contingent" on her obtaining financing and that because she could not obtain financing she is not bound by the contract. Again, this is not a proper basis for a Rule 12(b)(6)

---

[4] Defendant also improperly attaches a Certificate of Formation of Professional Limited Liability Company for Amrit Thandi PLLC as Exhibit 5 ("Certificate") to her motion. It is unclear what the purpose of the Certificate is, however, it was filed on November 17, 2022, after the contract was signed by Defendant. Consequently, the Certificate appears to be for the formation of a new entity that, like Amrit Thandi MD P.A., also was not in existence when the contract was signed on November 6, 2022.

motion to dismiss because it asks the Court to weigh evidence and decide factual issues. *NewSpin Sports, LLC, supra.*

Where the allegations in a complaint support the conclusion that a contract contingency has been waived, a court cannot dismiss a breach of contract claim under Rule 12(b)(6) based on the defendant's contention that the contingency has not been satisfied. *Marin v. Prellberg,* 1986 U.S. Dist. LEXIS 30110 *9 (Gottschall, J.). A party to a contract may waive performance of a condition that is inserted in the contract for his own benefit. *Id.* If a plaintiff can show defendant may have waived a contingency, dismissal is not appropriate. As the *Marin* court explained:

> It is the court's view that, as alleged by the facts of plaintiffs' complaint, conduct of the defendants and their agents might be proven which could amount to a waiver of the Flynn contingency. Since such matters, if proven at trial, could entitle plaintiffs to recovery, dismissal of the complaint is not appropriate.

*Marin,* 1986 U.S. Dist. LEXIS 30110 *9 (Gottschall, J.). Likewise, here the financing contingency would have been for Defendant's benefit, so Defendant can waive the provision. Plaintiff alleges that it delivered the equipment to Defendant and Defendant kept the equipment for more than a year. This clearly alleges conduct consistent with Plaintiff's position that any financing contingency provision was waived. Accordingly, dismissal is not inappropriate.[5]

One of the documents she attached to Defendant's motion to supposedly demonstrate that she could not obtain financing was a letter dated March 24, 2023, which is more than three months after the equipment was shipped. (Def. Resp. Ex. 2)[6] In any event, these facts are also

---

[5] Defendant asserts that Defendant "requested repeatedly that Plaintiff pick up <u>the machine.</u>" (Mot. at 6-7 (emphasis added)) This suggests that Defendant wanted to keep the second machine. Nevertheless, Plaintiff disputes that Defendant "requested repeatedly that Plaintiff pick up" either machine. (Decl. of A. Greer ¶8, EX. 2)

[6] It is noteworthy that this letter is addressed to Defendant personally (not her business) which further demonstrates that Defendant signed the contract in her individual capacity.

subject to dispute because Plaintiff has evidence that Defendant's credit application was approved. Plaintiff received confirmation that Defendant had received financing approval for her purchase. For example on December 16, 2022, Plaintiff received notice that Defendant had been approved for financing from two different sources. *See* Decl. of A. Greer ¶¶5, 6, EX. 2; Email from A. Mauri, MMP Capital, to M. McKinney, A. Falvey, J. Grisnik, Alma Lasers, Nov. 18, 2022, EX. 4 ("Subject: Dr. Amrit Thandi (APPROVED) … This customer has been approved for financing $214,000 plus tax."); Email from B. Brownstein, Provide Capital, to M. McKinney, Alma Lasers, Dec. 16, 2022, EX. 5 ("The merchant has been approved for financing and we will be paying you directly."). The notice provided both "bill to" and "ship to" instructions. (*Id.*)

In sum, Defendant's contention that the contract is not enforceable because she did not obtain financing is wrong (or at least is a disputed fact) and cannot be the basis for a motion to dismiss.

**B. This Court Should Deny Defendant's Rule 12(b)(3) Motion To Dismiss Or To Transfer Venue Pursuant To 28 U.S.C. §1406(a) or 1404(a) Because The Contract Includes An Enforceable Forum Selection And Choice Of Law Provision.**

The contract in this case includes both (i) an <u>exclusive</u> forum selection clause mandating that the state and federal courts located in Chicago, Illinois are the "exclusive jurisdiction and venue" for disputes pertaining to the contract, and (ii) mandating that the contract is governed by the law of Illinois without reference to principles of conflicts of laws. Specifically, the contract states:

> 17. Governing Provisions and Attorneys' Fees. THIS ORDER (INCLUDING THESE TERMS AND CONDITIONS) SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF ILLINOIS (WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS). … <u>The Parties hereby consent to the exclusive jurisdiction and venue of the state and federal courts located in Chicago, Illinois, U.S.A. for the resolution of any disputes between them pertaining to this Order. Buyer hereby waives the right to contest the jurisdiction and venue of said courts located in Chicago, Illinois, U.S.A.</u>…

(Cmpl. ¶17 (emphasis added))

The forum selection and choice of law provision like this one is enforceable under federal law. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 596 (1991); *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972); *Muzumdar v. Wellness International Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) ("where venue is specified with mandatory or obligatory language, the clause will be enforced").

Where a contract has a mandatory forum selection clause, the forum selection clause is to be given "controlling weight in all but the most exceptional circumstances":

> Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." §1404(a).
>
> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." … The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." … For that reason, and because the overarching consideration under §1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases"… The presence of a valid forum-selection clause requires district courts to adjust their usual §1404(a) analysis in three ways.

*Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62-63 (2013) (emphasis added) (citations omitted). One of the ways in which a valid forum-selection clause effects a district court's analysis of a motion to change venue is that the district court cannot consider any of the private interest factors which are the basis of defendant's motion.[7] As the Supreme Court stated:

---

[7] The private interest factors that the Court is not to consider are the factors relied upon by Defendant in her motion, namely, the situs of the material events, the relative ease and access to sources of proof, the convenience of the parties and the convenience of the witnesses. *Knight v. Baxter Healthcare Corp.*, 2020 U.S. Dist. LEXIS 199962 *3 (N.D. Ill. Oct. 27, 2020) (Kocoras, J.). Under the Supreme Court's decision in *Alt. Marine Construction Company*, this Court cannot consider these factors. Even if the Court could consider these factors, the factors do not

> <u>Second, a court evaluating a defendant's §1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests</u>. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. <u>A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.</u> As we have explained in a different but "'instructive'" context, *Stewart supra*, at 28 [] "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17-18 [] (1972); *see also Stewart, supra*, at 33 [] (Kennedy, J., concurring) (stating that *Bremen's* "reasoning applies with much force to federal courts sitting in diversity").

*Id.* at 64 (emphasis added).

Where there is a controlling forum selection clause the only issues the district court may consider are the public interest factors which means that the "forum-selection clauses should control except in unusual cases." *Id.* The public interest factors are (i) the administrative difficulties stemming from court congestion; (ii) the local interest in having localized disputes decided at home; (iii) the interest in having the trial of a diversity case in a forum at home with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty. *Iac/Interactivecorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022).

Defendant does not argue that any of these factors weigh in her favor and all indications are to the contrary. First, administrative difficulties weigh in favor of this Court because cases in the Northern District of Illinois generally reach disposition faster than in the Southern District of Texas and statistically more cases are resolved before pretrial. (U.S. District Courts–Median

---

weigh in favor of Defendant because the product was ordered and shipped from Illinois, therefore the situs of events occurred here, the records for the sale, shipment, and billing are located here, and the witnesses (identified by name in Mr. Greer's declaration) with knowledge of the credit approval, shipment, and billing for the equipment are located in this venue. (Decl. of A. Greer ¶¶1-7, EX. 2)

Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2023, EX. 6)[8]  Second, there is a local interest in having this localized dispute decided here.  This dispute involves an Illinois corporation that sold and shipped products from Illinois.  Third, the avoidance of unnecessary problems in conflicts of laws weighs in favor of venue in this Court because the contract specifically requires the application of Illinois law.[9]  Finally, the unfairness of burdening citizens in an unrelated forum, namely, Texas, with jury duty weighs in favor of having the case tried here because Plaintiff is located in this venue and Plaintiff initiated this legal action.

None of the cases cited by Defendant support her position in this case.  For example, *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902 (5th Cir. 2005) addressed whether a complaint should be dismissed because the plaintiff filed his claim in a federal district court in Louisiana and his employment contract had an arbitration clause requiring the plaintiff to arbitrate his claim in the Philippines.  *Lim* enforced a forum selection clause.  Unlike the plaintiff in *Lim*, Plaintiff in this case filed this lawsuit in the exclusive venue required by the parties' contract.

The *Krause v. Chippas* decision supports Plaintiff's position here because in that case the court gave effect to the parties' negotiated forum selection clause and ordered the plaintiff to litigate the dispute in the contractually designated venue.  *Krause v. Chippas*, 2007 U.S. Dist.

---

[8] https://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2023-tables

[9] Defendant argues that Texas law applies to the contract which ignores the negotiated choice-of-law provision in the contract.  Defendant cites no authority to support her contention that Texas law applies, and Defendant offers no explanation why the Court should not enforce the choice of law provision.  *Berry Floor USA, Inc. v. Faus Group, Inc.*, 2008 U.S. Dist. LEXIS 104675, *21 ("case law clearly holds that reasonable choice-of-law clauses should be enforced"); *Assembly Component Sys. v. Platinum Equity, L.L.C.*, 2010 U.S. Dist. LEXIS 67228, *8 ("Because choice-of-law clauses are presumptively valid, and reasonable choice-of-law provisions should be enforced").

LEXIS 94989, *13 (N.D. Tex. Dec. 28, 2007) (parties must litigate their dispute in the contractually designated venue based upon a valid forum selection clause).

The *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 307, 316 (5th Cir. 2008) decision did not involve a forum selection clause but instead was a decision based upon *forum nonconviens* ordering the transfer of a case from the plaintiff's seemingly random chosen forum in the Eastern District of Texas which had "no connection to the parties, the witnesses, or the facts of this case" to the Northern District of Texas "which has extensive connections to the parties, the witnesses, and the facts of this case."

Finally, Defendant's argument that the forum selection clause is not entitled to deference because the contract is not enforceable because a financing contingency was not fulfilled is misplaced. As set forth in Section II A (2) above, there is ample evidence that Defendant did obtain financing and therefore the contract is enforceable against Defendant. The equipment was delivered to Defendant, and Defendant's agent signed for the delivery. Defendant retained the equipment for more than a year. Any financing contingency was either satisfied or waived.

In sum, none of the cases cited by Defendant support her assertion that this Court should ignore the forum selection clause vesting jurisdiction and venue exclusively in the state and federal courts in Chicago, Illinois which also has a substantial connection to the events giving rise to this lawsuit.

## III.    RULE 15 MOTION FOR LEAVE TO AMEND.

If the Court were to consider granting Defendant's motion to dismiss for any reason, Plaintiff moves this Court pursuant to Rule of Civil Procedure 15 for leave to file an amended complaint to address any deficiency identified in the Court's decision.

## IV. CONCLUSION.

Defendant's motion improperly contests the facts alleged in Plaintiff's complaint, and Defendant's motion is replete with inaccuracies—or at a minimum—it is replete with assertions of disputed facts and legal inaccuracies. Plaintiff's complaint includes facts that more than amply support a claim for breach of contract. And, the contract includes an exclusive jurisdiction and venue provision requiring venue only in the state and federal courts located in Chicago, Illinois. The case authority, including controlling Supreme Court authority, requires that this Court enforce that provision. Accordingly, Defendant's motion should be denied in its entirety.

**ALMA LASERS, INC.**

By:   /s/ Kevin P. McJessy

One of Its Attorneys

Kevin P. McJessy
MCJESSY, CHING & THOMPSON, LLC
3759 North Ravenswood, Suite 231
Chicago, Illinois 60613
(773) 880-1260
(773) 880-1265 (facsimile)
mcjessy@mcandt.com

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 10, 2024, the foregoing **Alma Lasers, Inc.'s Response To Amrit Thandi's Motion To Dismiss Or Alternatively To Transfer Venue** was electronically filed with the Clerk of the United States District Court for the Northern District of Illinois by filing through the CM/ECF system, which electronically serves a copy of the foregoing upon all parties and counsel of record.

/s/ Kevin P. McJessy



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

John B. Scott
Secretary of State

# Forfeiture pursuant to Section 171.309 of the Texas Tax Code
## of
# Amrit Thandi MD P.A.

File Number  :  800432637                    Certificate / Charter forfeited  :  October 07, 2022

The Secretary of State finds that:

1. The Secretary has received certification from the Comptroller of Public Accounts under Section 171.302 of the Texas Tax Code indicating that there are grounds for the forfeiture of the taxable entity's charter, certificate or registration; and

2. The Comptroller of Public Accounts has determined that the taxable entity has not revived its forfeited privileges within 120 days after the date that the privileges were forfeited.

Therefore, pursuant to Section 171.309 of the Texas Tax Code, the Secretary of State hereby forfeits the charter, certificate or registration of the taxable entity as of the date noted above and records this notice of forfeiture in the permanent files and records of the entity.





John B. Scott
Secretary of State



PLAINTIFF'S
EXHIBIT

**1**

Come visit us on the Internet @https://www.sos.texas.gov/

(512) 463-5555                                FAX (512) 463-5709                        TTY 7-1-1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALMA LASERS, INC., a Delaware corporation,
                 Plaintiff,

   v.

AMRIT THANDI individually and d/b/a North Cypress
Family Practice,
                 Defendant

23 CV 14604

Honorable Judge Shah

Magistrate Judge Kim

## **DECLARATION OF ALAN GREER**

I, Alan Greer, hereby declare, under penalty of perjury pursuant to the laws of the United

States, that the following statements are true to the best of my knowledge, information, and

belief:

1.     I am a certified public accountant and the Chief Financial Officer of Alma Lasers,

Inc. I have been employed by Alma Lasers since 2007.  My office is at Alma Lasers'

headquarters in Buffalo Grove, Illinois, and I reside in the greater Chicago, Illinois area.

2.     As part of my responsibilities as CFO of Alma Lasers, I am responsible for

collection of unpaid accounts.  I have access to Alma Lasers' customer files, which are

maintained at Alma Lasers' Buffalo Grove headquarters.

3.     I have reviewed the file for Dr. Amrit Thandi.  I am familiar with Alma Lasers'

files for the order placed by Dr. Amrit Thandi on or about November 6, 2022.  A copy of the

contract is attached as Exhibit A.

4.     After Alma  Lasers received the contract from Dr. Thandi, Alma Lasers also

received confirmation that Dr. Thandi had obtained financing approval for the purchase.

5.     For example, Alma Lasers received the November 18, 2022 email attached here as

Exhibit B from Anthony Mauri at MMP Capital which provides equipment financing for medical



PLAINTIFF'S
EXHIBIT

**2**

professionals.  The email refers to Dr. Amrit Thandi and states in part that "This customer is approved for financing $214,000 plus tax."  Alma Lasers understood this to be the approval of financing for the contract.  The recipients of this email are Alyssa Falvey, a Sales Coordinator for Alma Lasers who lives in the Chicago area, Jason Grisnik, a Regional Sales Director for Alma Lasers who lives in the Cincinnati, Ohio area, and Michael McKinney, a former Senior Area Sales Manager for Alma Lasers who lived in Texas.  All of these persons have knowledge of this transaction and the financing approval.

6.    Alma Lasers also received the December 16, 2022 email attached here as Exhibit C from Benjamin Brownstein at Provide Capital, which also provides business equipment financing for medical professionals.  The email refers to Amrit Thandi MD P.A. and states that "The merchant has been approved for financing…."  Alma Lasers understood this to be the approval of financing for the contract.

7.    After Alma Lasers received notice that Dr. Thandi had been approved for financing, Alma Lasers shipped the equipment in the contract from its Buffalo Grove facility to Dr. Thandi on or about December 22, 2022.  Michael Adams, the Logistics Supervisor from Alma Lasers who works in Buffalo Grove and who resides in the Chicago area, has knowledge about the equipment shipped to Dr. Thandi and the delivery of the equipment.

8.    The equipment was delivered to Dr. Thandi on or about December 30, 2022.  A confirmation of the delivery is attached as Exhibit D.  There is nothing in Dr. Thandi's customer file for this order that indicates that Dr. Thandi objected to the delivery or tried to return to the equipment.  Moreover, there is nothing in Dr. Thandi's customer file that indicates she informed Alma Lasers that she had been unable to obtain financing to purchase the equipment.

9.    I have personal knowledge of the matters stated in this affidavit and could testify

competently to them.

28 U.S.C. §1746 Certification: I declare under penalty of perjury that the foregoing is true and
correct.

_____
Alan Greer, CPA

1 / 9 / 24
_____
Date

# Alma Lasers

**Quotation / Purchase Order**

485 Half Day Road Suite 100, Buffalo Grove, IL 60089
Phone: 224-377-2000  Fax: 646-805-1310

**Date:** 1/28/2022

## CUSTOMER INFORMATION

**Customer/Company Name:** ~~Trinity~~ North Cyprus Family Practice

**Sales Rep:** Mike McKinney

**Billing Address:** 11700 FM 1960 w

**Office Contact Name:** Dr. Amrit Thandi

**Billing City, State, Zip:** Houston, TX 77379

**Office/Clinic Phone:** 713-894-8899

**Shipping Address:** SAME

**Physician Name (Required):** Dr. Amrit Thandi.

**Shipping City, State, Zip:**

**Physician Email/Phone:** 713-894-8899

| Part Number | Including | Qty | List Price | Unit Discount | Extended Price |
|---|---|---|---|---|---|
| AATE16112101BA0001 | Ted System | 1 | Included | | Included |
| | • Power cord  • Marketing kit | | Included | | Included |
| | • Installation  • In-service clinical training | | | | |
| | • Operation Manual | 1 | | | |
| Warranty with Loaner | • 1 year of premium limited warranty | 1 | Included | | Included |
| | | | | | |
| AATE17112102 | Ted Handpiece (included) | 1 | $ . | | $ . |
| AAIM21122101 | Ted Hair Care Kit - 5pk (included) | 4 | $ . | | $ . |
| | | . | $ . | | $ . |
| | Ga Truck | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | ACC on site w/ website | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | Revent MD | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |
| | | . | $ . | | $ . |

**Order Notes:** Includes Soprano Titanium on other Page A.T.

\* Deposit is refundable if bank approval not obtained

| | | |
|---|---|---|
| Subtotal: | $ . | $ |
| Shipping and Handling | $ | ~~888.00~~ |
| Grand Total* | $ 214,000 | |

All specifications are according to Alma Lasers, Inc. printed brochures. Price valid for 30 days.

*Excluding all applicable taxes

### Acceptance of Terms and Conditions and Sale; Prescribing Practitioner Acknowledgement; Payment Terms

The customer identified in this Quotation/Purchase Order ("Customer" or "Buyer") agrees to purchase the goods and/or services identified above (the "Products") pursuant to the terms in this Quotation/Purchase Order as well as in the document entitled "ALMA LASERS, INC. TERMS AND CONDITIONS OF SALE AND LIMITED WARRANTY," which Buyer acknowledges having received and is incorporated by reference herein. Buyer and Alma Lasers, Inc. ("Alma Lasers") expressly disclaim any additional or different terms and conditions. Buyer authorizes Alma Lasers to procure a consumer report (i.e., a credit report) regarding Buyer, and all orders are subject to credit approval by Alma Lasers. The deposit is nonrefundable. Balance to be paid in full upon delivery.

Important note regarding Prescribing Practitioner: U.S. federal law restricts (and state law may also restrict) this medical device to sale or use by or on the order of a physician or other practitioner licensed in the state in which this medical device is used or ordered (a "Prescribing Practitioner"). Buyer represents and warrants to Alma Lasers that the Products are being purchased by or on the order of a properly licensed Prescribing Practitioner. Buyer and Buyer's Prescribing Practitioner are solely responsible for the use and operation of this medical device in accordance with all applicable laws and regulations and medical treatment guidelines, and for ensuring that each operator of this medical device is adequately trained and qualified to use and operate this medical device safely and properly in a clinical setting and to perform medical procedures in accordance with such laws, regulations, and guidelines. Use of this medical device involves certain risks of injury to patients, and Buyer and Buyer's Prescribing Practitioner are responsible for disclosure of such risks to patients and obtaining consent from such patients for such risks. Alma Lasers makes no representations or warranties regarding federal, state, or local laws or regulations or medical treatment guidelines that might apply to the use and operation of this device. Buyer and Buyer's Prescribing Practitioner are solely responsible for contacting state and local licensing agencies regarding requirements applicable to the use and operation of this medical device.

## Credit Card Authorization

**Credit Card Number:** 4246 3153 4113 7105

**Expiration Date:** 01/24

**Name on Card:** Amrit Thandi

**Card Billing Address Street:** 9010 Cyprus wood Dr

**Security Code:** 471

**Card City, State, Zip:** Spring, TX 77379

**I authorize Alma Lasers, Inc. to charge my nonrefundable credit card deposit in the amount of:** $ 21,400.00

All balances, other than the first $25,000 of the original deposit, paid by credit card shall incur an additional 3% fee.

**Alma Lasers, Inc. Signature:** _____  **Date:** _____

**Authorized Customer Name:** Dr. Amrit Thandi  **Title:** MD / owner

**Authorized Customer Signature:** _(signature)_  **Date:** 11/6/2

PLAINTIFF'S EXHIBIT

A

Scanned with CamScanner



**Enhancing Life**

TED | 1 Year Premium with Loaner
Ver. 1 2022

## ALMA LASERS, INC. TERMS AND CONDITIONS OF SALE AND LIMITED WARRANTY

These Terms & Conditions of Sale and Limited Warranty (these "Terms and Conditions") are incorporated into the attached Quotation/Purchase Order (the "Order Form," and, together with these Terms and Conditions, this "Order") between Alma Lasers, Inc. ("Alma") and the person or entity identified in the Order ("Buyer" and collectively with Alma, the "Parties") as purchasing the equipment, goods and/or services identified in the Order Form (the "Products"). The terms in the Order shall constitute the entire agreement between Alma and Buyer with respect to the subject matter hereof, and no other terms and conditions identified in any documentation supplied by Buyer shall have any force and effect.

**1. Prices and Payment.** Until Buyer signs the Order Form and Alma receives the Order Form and ships the Products, all prices are subject to change upon notice to Buyer (notwithstanding the receipt by Alma of the Buyer's deposit (the "Deposit")). The Deposit is payable upon execution of this Order by Buyer and is nonrefundable except as expressly provided in these Terms and Conditions. The balance of the amount due from the Buyer for the purchase of the Products must be paid by Buyer in full upon delivery of the Products, except if otherwise specified in the Order Form. All amounts shall be paid immediately available U.S. Dollars, without set-off or counterclaim. Interest shall be charged at the rate of 18% per year or the highest rate permitted by applicable law, whichever is less, on any invoice more than 30 days past due. Buyer agrees to reimburse Alma for its costs of collection of any past-due payments, including applicable court costs and attorneys' fees.

**2. Taxes and Other Charges.** Any sales or other tax on the transaction between Alma and Buyer (collectively, "Taxes") shall be paid by Buyer in addition to the prices quoted or invoiced. In the event Alma is required to pay any such Taxes, Buyer shall reimburse Alma for such payments. Any amount identified as a sales or other tax in this Order is provided as an estimate only, and such designation shall not limit Buyer's obligations under this paragraph.

**3. Shipping.** Delivery is FOB Alma's plant or warehouse, freight prepaid. Selection of carrier and routing of shipment shall be at Alma's option. Any delivery dates provided by Alma are approximate only and subject to change. Buyer waives and releases any claims against Alma regarding delivery dates.

**4. Delivery.** Title to, and risk of loss of, the Products shall transfer to Buyer upon shipping of the Products. Claims of errors in packaging must be made in writing to Alma within 10 days after shipment. Failure to give such notice shall constitute unqualified acceptance and a waiver of all such claims by Buyer. Claims of loss or damage to the Products in shipment must be filed with the carrier directly.

**5. No Cancellation or Return.** Except as expressly authorized herein, Buyer may not cancel this Order without Alma's written consent. Buyer may not return any Products, except in strict conformity with the Limited Warranty set forth in this Order. Without limitation to the foregoing, Buyer will be responsible for additional charges imposed by Alma if delivery of any Products is refused for any reason. Such charges will include the full amount of round-trip shipping and handling fees, plus any applicable restocking fees.

**6. Force Majeure.** Alma shall not be liable for any damages as a result of any delay or failure to deliver due to any cause beyond Alma's reasonable control. In the event of any such delay, the date of delivery shall be extended for a period equal to the time lost because of the delay. Buyer's exclusive remedy for Alma's inability to deliver for any reason shall be cancellation of this Order and the refund of all sums paid to Alma hereunder (including the Deposit).

**7. Security Interest.** Until Buyer pays Alma in full for all amounts due under this Order, Buyer grants to Alma a purchase money security interest in the Products (including all parts, proceeds, and accessories) to secure payment of such amounts. Buyer authorizes Alma to file or record a UCC statement showing Alma's interest in all such collateral in all jurisdictions determined advisable by Alma and will execute any document confirming such interest as may be requested by Alma. Buyer will not encumber the Products with any other lien or attachment prior to payment in full.

**8. Changes.** Alma may at any time make such changes in design and construction of the Products as Alma deems appropriate. If the design of the Products purchased hereunder is materially changed prior to shipment, Alma shall notify Buyer of such change as soon as reasonably practicable after such change. In the event of any such change, Buyer may accept the Products with such change, or Buyer may cancel this Order and receive a refund of all sums paid to Alma hereunder (including the Deposit).

**9. Installation.** Installation of the Products at Buyer's facility shall be completed by Alma directly or by Alma's designated representative at a time convenient to the Parties. Subject to the terms and conditions hereof, Alma shall provide to Buyer Alma's standard training in the use and operation of the Products. Availability of standard training offered by Alma shall expire one year from delivery of Products. In the event that Buyer schedules training with Alma but cancels the scheduled training with less than 7 days' advanced written notice to Alma, Buyer agrees to pay a fee of $2,500 for rescheduling the training. Any marketing services scheduled to be provided to Buyer as described in the Order Form must be utilized by Buyer within 12 months of the date of installation of the Products or such marketing services are waived. Buyer will be responsible for installation of any consumables associated with the Products that are later purchased by the Buyer. Buyer's installation of non-Alma consumables may adversely impact Product performance.

**10. Indemnity.** Buyer shall indemnify and hold Alma harmless against any and all losses, liabilities, damages and expenses (including, without limitation, attorneys' fees and other costs of defending any action) which Alma may incur as a result of any claim by Buyer or third parties arising out of or in connection with the purchase or use of any Product (including, without limitation, any claim arising from misuse or improper use of any Product), whether by Buyer or any other person (whether or not authorized by Buyer), and any claim arising from any modification to or alteration of any Products (except to the extent expressly authorized by Alma), except for express obligations of Alma under the limited warranty set forth in this Order. Buyer shall promptly notify Alma if it receives notice of any claims by third parties pertaining to any Product.

**11. Compliance with Law.** Buyer is solely responsible for the use and operation of the Products in accordance with all applicable laws, regulations, and medical and treatment guidelines, and for ensuring that each operator of this medical device is adequately trained and qualified to use and operate this device. Alma Lasers makes no representations or warranties regarding federal, state or local laws or regulations, or medical or treatment guidelines. Use of this medical device involves certain risks of injury to patients. Buyer is solely responsible for ensuring that patients are informed of and consent to these risks. Improper use of this device increases the risk of injury to patients.

**12. Software.** To the extent that any Products contain computer software or firmware or other code ("Embedded Software"), Alma grants to Buyer a non-exclusive, non-transferable license to use the Embedded Software solely in the form provided as part of the Products to operate the Products. All rights are reserved by Alma in such Embedded Software. Buyer will not reverse engineer, disassemble, decompile, or seek access to any Embedded Software, except and only to the extent that such activity is permitted by applicable law notwithstanding this provision. Except for the foregoing limited license, the sale of Products hereunder shall in no way be deemed to confer upon Buyer any right or interest in or license to any patent, patent application, design, copyright, trademark, service mark or trade name or any other proprietary or intellectual property right of Alma relating to the Products sold hereunder.

**13. Technical Information.** Any sketches, models or samples, any software, or any design or production techniques made available by Alma to Buyer shall remain the property of Alma. Such sketches, models and samples, software, and design and production techniques shall be treated as confidential information of Alma and may not be used or disclosed by Buyer without the express written consent of Alma, unless Alma has made such information generally available to the public without restriction.

**14. Manuals, Brochures, and Instructions; Training.** Training. Any and all operating manuals, instructions, brochures, warnings and the like concerning the Products supplied hereunder are supplied as an aid to Buyer and are not represented to be accurate, complete, or sufficient for every use or purpose, or for treatment of every patient, in Buyer's clinical setting. Buyer warrants that it shall train all its employees and/or third party users of the Products purchased by Buyer hereunder, and that it shall cause such employees and/or third parties to use the Products properly and safely.

**15. Insurance.** Buyer shall, at Buyer's sole cost and expense, keep the Products purchased pursuant to this Order insured against all risks of loss or damage from every cause whatsoever for not less than the full replacement cost thereof for as long as any amounts are owed by Buyer to Alma for such Products. All insurance shall be in such form and for such amounts, and issued by such companies, as shall be acceptable to Alma and shall name Alma and Alma's assignee or secured party as loss payees with respect to the casualty coverage, and shall provide that the insurer will give Alma or Alma's assignee at least 30 days' prior written notice of the effective date of any alteration or cancellation of such policy. Buyer shall, upon Alma's request, deliver to Alma satisfactory evidence of the required insurance coverage. Insurance proceeds as a result of loss or damage to any of the Products shall be applied to satisfy Buyer's obligation hereunder. Buyer irrevocably appoints Alma as Buyer's attorney-in-fact to make a claim for, receive payment of, and execute and endorse all documents, checks, or drafts received in payment for loss or damage under any such insurance policy.

**16. Equipment Password.** Buyer acknowledges and agrees that certain equipment included in the Products requires Buyer to enter a password issued by Alma to operate said equipment and that the equipment will require a new password every 30 days ("Password Cycle"), and that such equipment will become disabled after the password for the applicable Password Cycle has expired unless the applicable new password is entered. So long as any Buyer's account with Alma (including but not limited to those accounts covered by this Order) does not have a past due amount, Alma shall supply Buyer with a new password to be used during the next Password Cycle. However, Alma reserves the right to not issue such new password at any time that any past due amount remains unpaid for any account Buyer has with Alma. Buyer shall not circumvent or attempt to circumvent any of the technological features that control operation of the Products that are described in this paragraph.

**Alma Lasers Inc. U.S. Headquarters**
485 Half Day Road, Suite 100 | Buffalo Grove, IL 60089 | Tel: 224-377-2000 | Fax: 646-805-1310 | info@almalasers.com



Scanned with CamScanner


TED | 1 Year Premium with Loaner
Ver. 1.2022

**17.   Governing Provisions and Attorneys' Fees.** THIS ORDER (INCLUDING THESE TERMS AND CONDITIONS) SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF ILLINOIS (WITHOUT REFERENCE TO PRINCIPLES OF CONFLICTS OF LAWS). The Parties hereby agree to exclude application of the United Nations Convention on Contracts for the International Sale of Goods (1980). The Parties hereby consent to the exclusive jurisdiction and venue of the state and federal courts in Chicago, Illinois, U.S.A. for the resolution of any disputes between them pertaining to this Order. Buyer hereby waives the right to contest the jurisdiction and venue of said courts located in Chicago, Illinois, U.S.A. If Alma must resort to legal action as a result of a breach by Buyer of any of the provisions of this Order, and if Alma proves to a court that Buyer has breached any of the provisions of this Order, Alma shall be entitled to recover from Buyer its reasonable attorneys' fees and costs incurred in proving such breach.

**18.   Interpretation.** The Parties have participated, or had the opportunity to participate in, the negotiation of this Order or requested, or had the opportunity to request, amendments to this Order, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Order. In the event any provision of this Agreement shall be deemed to be invalid, illegal, or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. The Parties agree to replace any invalid provision with a valid provision which most closely approximates the intent and economic effect of the invalid provision. Except as expressly set forth herein, this Order is for the sole benefit of the Parties hereto, and nothing herein expressed or implied shall be construed to give any other person or entity any rights hereunder. This Order may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

**19.   Amendment and Assignment.** This Order may be amended only by written agreement of the Parties executed by their authorized officers. No waiver by Alma of any default or breach by Buyer will operate as or be deemed a waiver of any subsequent default or breach. Alma may assign this Order to a parent, affiliate, financial concern, or purchaser of its business. This Order may not be otherwise assigned in whole or in part, and any such assignment will be void and of no force or effect. Subject to the foregoing, this Order shall inure to the benefit of the Parties and their permitted successors and assigns.

**20.   Limited Warranty With Loaner.**

a.    Alma warrants to Buyer that the Products, other than (a) consumable components or accessories, and (b) disposable components or accessories, shall be free from defects in material and workmanship for a period of 12 months from the date of installation, but in no event more than 13 months from the date of shipment (in the event that installation occurs more than one month after shipment), or (c) for the Duo Applicators: the earlier of 1 year or 18,000 shocks (the "Warranty Period"). During such Warranty Period, Alma shall either repair or replace, at Alma's sole option, any warranted parts of the Products. Such repair or replacement shall be conditioned upon Alma receiving written notice of the requested repair within ten days after its discovery and, at Alma's option, either return of such parts to Alma at Alma's facility in Buffalo Grove, IL, or repair hereunder.

b.    Upon receipt of a written notice of a requested repair, if Products cannot be repaired pursuant to telephone instructions, Alma shall in its discretion either repair the Products at the Buyer's location or through depot service. If Alma elects to perform repair of Products at Buyer's location, Buyer will provide Alma personnel with access to the Products. As part of any depot service, during the period covered by this warranty, within two business days of such notice, Alma shall ship a loaner unit to Buyer. Upon receipt of such loaner unit, Buyer shall immediately ship to Alma its unit and Alma's Service Department will, to the extent reasonably practicable, repair the unit (or, at Alma's sole discretion, replace the unit) and ship it back to Buyer. Upon receipt of the repaired or replacement unit, Buyer shall immediately ship Alma's loaner unit back to Alma. Alma will bear the costs of shipment, provided that Buyer completes such shipping in accordance with Alma's packing and shipping instructions. If, upon inspection, Alma determines that either the Products are no longer covered by this warranty or that the repair is not a covered repair, Alma shall charge Buyer for the cost of such repair and associated shipping costs. Title to any loaner unit shall at all times remain with Alma, and Buyer shall not take any action which may cause the loaner unit to be encumbered with any mortgage, lien, pledge or other attachment or encumbrance, and any such purported transaction shall be void and not of force or effect. To the extent that notwithstanding the foregoing any act or failure to act on the part of the Buyer creates any mortgage, lien, pledge or other attachment or encumbrance on a loaner unit, Alma is authorized to discharge such encumbrance by payment to the holder thereof and Buyer shall immediately reimburse Alma for all amounts incurred in connection therewith.

c.    THE FOREGOING LIMITED WARRANTY CONSTITUTES ALMA'S SOLE LIABILITY FOR DEFECTS.  THIS LIMITED WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER REPRESENTATIONS AND WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL. ALMA DISCLAIMS AND EXCLUDES ANY AND ALL OTHER WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE AND ANY WARRANTIES ARISING FROM COURSE OF DEALING OR USAGE OF TRADE.

d.    The above Limited Warranty shall be void and of no effect: (a) if the warranted Product is not installed by an authorized Alma representative; (b) if anyone other than an authorized Alma representative removes a Product casing or attempts to make any modifications or repairs to the warranted product or makes any attachments or additions to the warranted Product; (c) if the warranted Product is damaged by anyone other than an authorized Alma representative; (d) if the warranted product is not operated in accordance with Alma's instructions; (e) if the warranted product has not been properly maintained or has been subjected to misuse, negligence or abnormal conditions; (f) if non-Alma consumable components or accessories are used with or attached to the warranted Product in any manner relevant to the requested repair; or (g) if a warranted Product is moved from the site of its original installation by anyone other than authorized Alma personnel. In addition, this Limited Warranty shall be void if the warranted Product is resold or leased to any party other than the original Buyer or if any money owed to Alma by Buyer is more than 30 days past due. In no event shall the repair or replacement of the Products or any part thereof extend the period of warranty set forth herein. Alma's liability with respect to the warranted Products shall be limited to the warranty provided hereof, and shall be limited to the price of the warranted Products.

**21.   Limited Warranty, Consequential Damages, and Limitation of Other Liability.** Alma's liability with respect to any claimed defects in the Products sold hereunder shall be as set forth in the Limited Warranty above, and any damages shall be limited to the price of the Products. ALMA SHALL NOT BE SUBJECT TO ANY OTHER OBLIGATIONS OR LIABILITIES, WHETHER ARISING OUT OF BREACH OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY) OR OTHER THEORIES OF LAW, WITH RESPECT TO PRODUCTS SOLD OR SERVICES RENDERED BY ALMA, OR ANY UNDERTAKINGS, ACTS OR OMISSIONS RELATING THERETO. ALMA SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, CONTINGENT, SPECIAL, PUNITIVE OR INDIRECT DAMAGES WHATSOEVER, AND ALMA HEREBY DISCLAIMS ANY AND ALL SUCH DAMAGES. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALMA SPECIFICALLY DISCLAIMS ANY LIABILITY FOR PROPERTY OR PERSONAL INJURY DAMAGES, PENALTIES, DAMAGES FOR LOST PROFITS OR REVENUES, LOSS OF USE OF THE PRODUCT, COST OF CAPITAL, COST OF SUBSTITUTE PRODUCTS, FACILITIES OR SERVICES, DOWN-TIME, SHUT-DOWN, SLOW-DOWN COSTS OR ANY OTHER TYPES OF ECONOMIC LOSS, OR FOR CLAIMS OF BUYER'S CUSTOMERS, CLIENTS OR PATIENTS, OR ANY THIRD PARTY FOR ANY SUCH DAMAGES. WITHOUT LIMITATION OF THE FOREGOING, IN NO EVENT WILL ALMA'S LIABILITY FOR ANY FAILURE OF PERFORMANCE OR OTHER BREACH OF THIS ORDER, FOR ANY BREACH OF THE LIMITED WARRANTY INCLUDED HEREIN, OR OTHERWISE ARISING UNDER OR IN ANY WAY RELATING TO THIS ORDER, EXCEED THE PRICE ACTUALLY PAID BY BUYER FOR THE PRODUCT FROM WHICH SUCH LIABILITY ARISES (OR, IN THE EVENT SUCH LIABILITY DOES NOT ARISE IN CONNECTION WITH ANY SPECIFIED PRODUCT, THE TOTAL PRICE ACTUALLY PAID BY BUYER HEREUNDER), AND BUYER HEREBY WAIVES AND RELEASES ANY CLAIMS AGAINST ALMA IN EXCESS OF SUCH AMOUNTS.

A.T.

Buyer's Initials

11/6/22

Date

**Alma Lasers Inc. U.S. Headquarters**
485 Half Day Road, Suite 100 | Buffalo Grove, IL 60089 | Tel: 224-377-2000 | Fax: 646-805-1310 | info@almalasers.com



**From:** Anthony Mauri <amauri@mmpcapital.com>
**Sent:** Friday, November 18, 2022 12:46 PM
**To:** Alyssa Falvey; Jason Grisnik; Michael McKinney
**Subject:** Dr. Amrit Thandi (APPROVED)

Alyssa,

This customer is approved for financing $214,000 plus tax. Please let me know if there is anything else i can provide.

Get Outlook for iOS



**Anthony Mauri**
Sr. Account Manager / Sr. Team Leader

**e:** amauri@mmpcapital.com
**o:** (516) 262-3357 | **m:** (516) 510-8510 | **f:** (516) 400-2071

*"The man who thinks he can and the man who thinks he can't are both right."* -Henry Ford

     

**CAUTION:** This email originated from outside Alma Lasers. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Forward suspicious emails as an attachment to ITSupport@Almalasers.com.



PLAINTIFF'S
EXHIBIT

**B**

**From:** Michael McKinney <Michael.McKinney@almalasers.com>
**Sent:** Tuesday, December 20, 2022 11:26 AM
**To:** Alyssa Falvey
**Subject:** Fwd: AMRIT THANDI MD P.A.
**Attachments:** image002.png; Thandi - TED and Titanium Docs (1).pdf

Sent from my iPhone
**Michael McKinney**│Area Sales Manager - Aesthetics



C: 210-464-5378
Email: Michael.McKinney@almalasers.com│almainc.com



Begin forwarded message:

> **From:** Benjamin Brownstein <bbrownstein@providecapital.com>
> **Date:** December 16, 2022 at 11:44:47 AM CST
> **To:** Michael McKinney <michael.mckinney@almalasers.com>
> **Subject: AMRIT THANDI MD P.A.**
>
> Hey Mike,
>
> It was a pleasure speaking.
>
> Please provide an invoice for the attached sales quote. The merchant has been approved for financing and we will be paying you directly.
>
> Please include the following:
>
> Bill to:
> Amrit Thandi MD P.A.
> 11700 FM 1960 W
> Houston, TX 77065
>
> Ship to:



PLAINTIFF'S
EXHIBIT

**C**

1

Amrit Thandi MD P.A.
11700 FM 1960 W
Houston, TX 77065

**Please make sure to include the 10% security deposit as a down payment**

Please provide equipment description with year make and model (Serial #, etc)..
Please include payment instructions – we prefer to ACH/wire.

If you have any questions, please call me at 424-599-4902.

**Ben Brownstein**

*Finance Manager*

9201 W. Sunset Blvd.

West Hollywood, CA 90069

Direct Line: (424) 599-4902

Fax: (424) 203-3636

Customer Service: (888) 238-3398

**CAUTION:** This email originated from outside Alma Lasers. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Forward suspicious emails as an attachment to ITSupport@Almalasers.com.

**From:** ops@loveexpress.com
**To:** Michael Adams
**Subject:** E-POD - Waybill#533475
**Date:** Tuesday, January 24, 2023 2:09:22 PM

## POD Name: CHRISTINE, POD Date & Time: 12/30/2022 11:45 AM

Click here for Tracking or Shipment Detail.

Shipment:
-------------------------------------------------------
Housebill#: 533475
Ready Date & Time: 12/22/2022 3:00 PM
Total Pieces: 2
Description: Alma Ted + Soprano Titanium
Total Chargeable Weight(lb): 700.0
Total Actual Weight(lb): 700.0


Shipper Info:
-------------------------------------------------------
ALMA LASERS
485 E HALF DAY RD
SUITE 100
BUFFALO GROVE, IL 60089
UNITED STATES OF AMERICA
Contact: MIKE ADAMS
224-377-2000
Ref#:SO SO-INC106247/SO-INC106248


Reference List
--------------
SO - SO-INC106247/SO-INC106248


Consignee Info:
-------------------------------------------------------
North Cypress Family Practice and Laser Center
11700 FM 1960 W
Houston, TX 77065
UNITED STATES OF AMERICA
Contact: Mike
210-464-5378
Ref#:SO SO-INC106247/SO-INC106248, SO SO-INC106247/SO-INC106248


Reference List



--------------
SO - SO-INC106247/SO-INC106248

**CAUTION:** This email originated from outside Alma Lasers. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Forward suspicious emails as an attachment to ITSupport@Almalasers.com.



## Shipment Inquiry

| | |
|---|---|
| Tracking Number: | 533475 |
| Housebill Number: | 533475 |
| Shipment Date/Time: | 12/22/2022 3:00 PM |
| Scheduled Delivery Date/Time: | on 12/30/2022 between 11:00 AM and 12:00 PM |
| Signed For By: | CHRISTINE |
| Shipment Received On: | 12/30/2022 11:45 AM |
| Service Level: | EX-3-5 Deferred-Expedited Ground |
| Pieces: | 2 |
| Chargeable Weight: | 700.0 lbs |
| Weight: | 700.0 lbs |
| Shipper Reference: | SO-INC106247/SO-INC106248 |
| Consignee Reference: | SO-INC106247/SO-INC106248 |
| Bill-To Reference: | SO-INC106247/SO-INC106248 |
| Shipment Mode: | Domestic |
| Status: | Shipment Delivered |

Station Info: Love Express, Inc., 847.357.8030, len@loveexpress.com

## Tracking Notes

| Status Updated On | Note |
|---|---|
| 1/24/2023 2:09:15 PM | Email Status Notification Sent |
| 12/30/2022 11:45:00 AM | Shipment Status changed to: Shipment Delivered |
| 12/22/2022 12:50:14 PM | Shipment Status changed to: New Shipment |

Back



# Texas Secretary of State
## Jane Nelson

| UCC | Business Organizations | Trademarks | Notary | Account | Help/Fees | Briefcase | Logout |

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 800432637 | **Entity Type:** | Professional Association |
| **Original Date of Filing:** | December 28, 2004 | **Entity Status:** | Forfeited existence |
| **Formation Date:** | N/A | | |
| **Tax ID:** | 32035479115 | **FEIN:** | |
| **Duration:** | Perpetual | | |
| **Name:** | Amrit Thandi MD P.A. | | |
| **Address:** | 9010 CYPRESSWOOD DR | | |
| | SPRING, TX 77379-6911 USA | | |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS |
|---|---|---|---|---|---|---|
| Assumed Name | | Date of Filing | Expiration Date | Inactive Date | Name Status | Counties |
| No names exist for this filing. | | | | | | |

[Order] [Return to Search]

Instructions:
● To place an order for additional information about a filing press the 'Order' button.

- SOSDirect - Business Filings
- Business Copies and Certificates
- Uniform Commercial Code
- Texas Businesses Against Trafficking
- Texas.gov

- VoteTexas.gov - Voter Information
- Register to Vote & Voter I.D.
- Website Policies
- Open Records
- Contact us

- Texas Homeland Security
- Where the Money Goes
- Fraud Reporting
- Texas Veterans Portal

**PLAINTIFF'S EXHIBIT**

**3**

**Kevin McJessy**

**From:** Anthony Mauri <amauri@mmpcapital.com>
**Sent:** Friday, November 18, 2022 12:46 PM
**To:** Alyssa Falvey; Jason Grisnik; Michael McKinney
**Subject:** Dr. Amrit Thandi (APPROVED)

Alyssa,

This customer is approved for financing $214,000 plus tax. Please let me know if there is anything else i can provide.

Get Outlook for iOS



**Anthony Mauri**
Sr. Account Manager / Sr. Team Leader

**e:** amauri@mmpcapital.com
**o:** (516) 262-3357 | **m:** (516) 510-8510 | **f:** (516) 400-2071

*"The man who thinks he can and the man who thinks he can't are both right." -Henry Ford*

     

**CAUTION:** This email originated from outside Alma Lasers. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Forward suspicious emails as an attachment to ITSupport@Almalasers.com.



PLAINTIFF'S
EXHIBIT

**4**

**From:** Michael McKinney <Michael.McKinney@almalasers.com>
**Sent:** Tuesday, December 20, 2022 11:26 AM
**To:** Alyssa Falvey
**Subject:** Fwd: AMRIT THANDI MD P.A.
**Attachments:** image002.png; Thandi - TED and Titanium Docs (1).pdf

Sent from my iPhone
**Michael McKinney**│Area Sales Manager - Aesthetics



C: 210-464-5378
Email: Michael.McKinney@almalasers.com│almainc.com



Begin forwarded message:

> **From:** Benjamin Brownstein <bbrownstein@providecapital.com>
> **Date:** December 16, 2022 at 11:44:47 AM CST
> **To:** Michael McKinney <michael.mckinney@almalasers.com>
> **Subject: AMRIT THANDI MD P.A.**

Hey Mike,

It was a pleasure speaking.

Please provide an invoice for the attached sales quote. The merchant has been approved for financing and we will be paying you directly.

Please include the following:

Bill to:
Amrit Thandi MD P.A.
11700 FM 1960 W
Houston, TX 77065

Ship to:



PLAINTIFF'S
EXHIBIT

**5**

Amrit Thandi MD P.A.
11700 FM 1960 W
Houston, TX 77065

**Please make sure to include the 10% security deposit as a down payment**

Please provide equipment description with year make and model (Serial #, etc)..
Please include payment instructions – we prefer to ACH/wire.

If you have any questions, please call me at 424-599-4902.

**Ben Brownstein**

*Finance Manager*

9201 W. Sunset Blvd.

West Hollywood, CA 90069

Direct Line: (424) 599-4902

Fax: (424) 203-3636

Customer Service: (888) 238-3398

**CAUTION:** This email originated from outside Alma Lasers. Do not click links, open attachments or forward unless you recognize the sender, the sender's email domain and you know the content is safe. Forward suspicious emails as an attachment to ITSupport@Almalasers.com.

PLAINTIFF'S
EXHIBIT

6

**Table C-5.**

**U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition,**
**During the 12-Month Period Ending March 31, 2023**

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | During Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **Total** | **288,189** | **12.0** | **78,194** | **7.3** | **179,944** | **12.2** | **28,175** | **17.9** | **1,876** | **33.2** |
| **DC** | **3,294** | **4.7** | **1,035** | **3.0** | **2,235** | **6.3** | **8** | **-** | **16** | **33.1** |
| **1st** | **4,627** | **11.5** | **1,893** | **8.0** | **1,908** | **10.7** | **762** | **18.3** | **64** | **31.4** |
| ME | 380 | 8.0 | 73 | 3.4 | 286 | 9.9 | 9 | - | 12 | 24.9 |
| MA | 2,648 | 10.8 | 1,395 | 8.0 | 605 | 7.8 | 618 | 18.5 | 30 | 31.4 |
| NH | 316 | 11.6 | 90 | 4.8 | 118 | 9.9 | 100 | 15.5 | 8 | - |
| RI | 495 | 10.7 | 259 | 11.4 | 223 | 9.9 | 4 | - | 9 | - |
| PR | 788 | 17.1 | 76 | 19.8 | 676 | 16.3 | 31 | 35.1 | 5 | - |
| **2nd** | **24,118** | **6.8** | **4,780** | **3.0** | **15,739** | **6.9** | **3,416** | **16.1** | **183** | **48.8** |
| CT | 1,470 | 9.2 | 335 | 4.2 | 666 | 7.8 | 454 | 16.9 | 15 | 39.3 |
| NY,N | 1,399 | 10.1 | 186 | 3.0 | 939 | 10.7 | 262 | 17.0 | 12 | 55.6 |
| NY,E | 7,668 | 5.5 | 1,766 | 2.4 | 4,762 | 5.5 | 1,091 | 16.0 | 49 | 62.2 |
| NY,S | 11,472 | 5.9 | 2,308 | 3.1 | 7,553 | 5.9 | 1,514 | 14.6 | 97 | 47.7 |
| NY,W | 1,872 | 16.9 | 119 | 5.6 | 1,654 | 17.6 | 92 | 26.0 | 7 | - |
| VT | 237 | 8.1 | 66 | 5.3 | 165 | 9.7 | 3 | - | 3 | - |
| **3rd** | **19,963** | **9.0** | **3,549** | **3.7** | **10,894** | **7.6** | **5,263** | **15.9** | **257** | **36.2** |
| DE | 1,695 | 7.4 | 438 | 2.4 | 1,086 | 8.5 | 115 | 24.8 | 56 | 37.0 |
| NJ | 8,331 | 10.0 | 385 | 2.4 | 4,591 | 4.6 | 3,251 | 20.4 | 104 | 36.2 |
| PA,E | 6,260 | 8.5 | 1,823 | 3.4 | 3,195 | 11.3 | 1,181 | 10.8 | 61 | 23.6 |
| PA,M | 1,496 | 12.0 | 465 | 7.4 | 959 | 13.8 | 61 | 14.1 | 11 | 32.5 |
| PA,W | 1,987 | 6.6 | 337 | 3.6 | 1,020 | 5.2 | 608 | 10.2 | 22 | 35.2 |
| VI | 194 | 17.6 | 101 | 11.9 | 43 | 20.3 | 47 | 22.6 | 3 | - |
| **4th** | **11,327** | **8.7** | **1,873** | **6.0** | **7,915** | **8.2** | **1,426** | **14.9** | **113** | **29.3** |
| MD | 3,076 | 8.7 | 194 | 7.1 | 2,163 | 6.5 | 691 | 25.1 | 28 | 37.5 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| NC,E | 868 | 10.5 | 309 | 8.6 | 551 | 10.9 | 4 | - | 4 | - |
| NC,M | 643 | 10.4 | 326 | 8.6 | 293 | 11.1 | 19 | 32.8 | 5 | - |
| NC,W | 1,120 | 7.9 | 111 | 2.4 | 702 | 6.4 | 295 | 13.0 | 12 | 25.1 |
| SC | 2,303 | 9.3 | 248 | 2.3 | 2,009 | 9.9 | 31 | 13.8 | 15 | 34.7 |
| VA,E | 2,096 | 6.7 | 586 | 6.1 | 1,156 | 5.8 | 332 | 9.0 | 22 | 24.4 |
| VA,W | 516 | 12.0 | 51 | 3.5 | 438 | 12.7 | 13 | 16.7 | 14 | 26.0 |
| WV,N | 269 | 10.5 | 16 | 3.6 | 213 | 9.9 | 33 | 16.0 | 7 | - |
| WV,S | 436 | 12.3 | 32 | 4.4 | 390 | 12.3 | 8 | - | 6 | - |
| **5th** | **32,691** | **12.9** | **6,833** | **5.8** | **18,337** | **11.8** | **7,232** | **73.6** | **289** | **28.2** |
| LA,E | 8,764 | 68.9 | 419 | 4.1 | 3,093 | 14.8 | 5,222 | 74.7 | 30 | 32.6 |
| LA,M | 725 | 11.7 | 195 | 8.7 | 505 | 12.1 | 17 | 29.0 | 8 | - |
| LA,W | 3,629 | 9.1 | 625 | 7.4 | 2,493 | 8.9 | 483 | 15.9 | 28 | 29.5 |
| MS,N | 671 | 8.3 | 100 | 4.0 | 244 | 4.3 | 321 | 12.4 | 6 | - |
| MS,S | 1,064 | 11.8 | 446 | 10.1 | 570 | 12.6 | 28 | 27.1 | 20 | 29.5 |
| TX,N | 7,297 | 30.2 | 594 | 3.6 | 6,674 | 47.7 | 3 | - | 26 | 21.4 |
| TX,E | 2,036 | 8.7 | 697 | 5.4 | 1,294 | 9.8 | 9 | - | 36 | 23.4 |
| TX,S | 4,634 | 8.5 | 2,241 | 5.8 | 1,468 | 8.5 | 850 | 13.1 | 75 | 29.2 |
| TX,W | 3,871 | 7.6 | 1,516 | 5.5 | 1,996 | 8.2 | 299 | 17.7 | 60 | 29.9 |
| **6th** | **12,515** | **9.9** | **3,379** | **5.9** | **6,567** | **9.5** | **2,465** | **15.1** | **104** | **30.2** |
| KY,E | 971 | 14.8 | 126 | 6.9 | 834 | 16.5 | 4 | - | 7 | - |
| KY,W | 930 | 11.2 | 140 | 6.9 | 770 | 11.7 | 13 | 15.9 | 7 | - |
| MI,E | 2,637 | 8.5 | 469 | 2.8 | 1,042 | 5.0 | 1,106 | 16.8 | 20 | 30.3 |
| MI,W | 978 | 5.7 | 61 | 2.1 | 687 | 4.1 | 224 | 14.0 | 6 | - |
| OH,N | 2,091 | 9.1 | 591 | 4.6 | 787 | 8.9 | 702 | 12.7 | 11 | 24.6 |
| OH,S | 2,300 | 11.8 | 1,034 | 8.4 | 934 | 13.1 | 321 | 15.4 | 11 | 31.0 |
| TN,E | 830 | 11.0 | 279 | 7.6 | 450 | 11.3 | 83 | 14.4 | 18 | 30.4 |
| TN,M | 977 | 10.2 | 287 | 8.6 | 676 | 10.3 | 2 | - | 12 | 27.2 |
| TN,W | 801 | 9.9 | 392 | 9.2 | 387 | 10.1 | 10 | 17.0 | 12 | 27.4 |
| **7th** | **14,158** | **9.2** | **3,026** | **4.2** | **9,283** | **10.0** | **1,753** | **13.3** | **96** | **41.3** |
| IL,N | 6,951 | 6.7 | 1,917 | 4.2 | 4,634 | 7.7 | 361 | 13.2 | 39 | 49.8 |
| IL,C | 581 | 11.2 | 264 | 9.3 | 310 | 12.4 | 2 | - | 5 | - |
| IL,S | 752 | 11.0 | 344 | 4.4 | 394 | 16.3 | 6 | - | 8 | - |
| IN,N | 1,312 | 11.5 | 52 | 1.9 | 837 | 9.2 | 406 | 18.2 | 17 | 47.5 |
| IN,S | 2,864 | 13.3 | 174 | 3.7 | 1,983 | 16.7 | 701 | 11.6 | 6 | - |
| WI,E | 1,075 | 8.9 | 124 | 3.0 | 894 | 9.4 | 48 | 10.6 | 9 | - |
| WI,W | 623 | 10.0 | 151 | 3.3 | 231 | 9.8 | 229 | 13.8 | 12 | 22.2 |
| **8th** | **8,812** | **8.3** | **3,746** | **5.4** | **4,195** | **9.4** | **781** | **12.4** | **90** | **27.8** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AR,E | 960 | 12.4 | 524 | 14.4 | 410 | 10.6 | 7 | - | 19 | 30.6 |
| AR,W | 563 | 11.3 | 18 | 7.5 | 487 | 11.0 | 51 | 13.7 | 7 | - |
| IA,N | 305 | 8.6 | 96 | 9.6 | 205 | 8.3 | 0 | - | 4 | - |
| IA,S | 352 | 10.8 | 175 | 11.5 | 165 | 9.1 | 7 | - | 5 | - |
| MN | 2,858 | 6.2 | 1,870 | 2.8 | 294 | 10.7 | 681 | 11.8 | 13 | 42.8 |
| MO,E | 1,340 | 9.0 | 341 | 6.7 | 973 | 10.0 | 13 | 24.4 | 13 | 27.3 |
| MO,W | 1,518 | 6.4 | 453 | 5.5 | 1,039 | 6.7 | 13 | 14.1 | 13 | 20.2 |
| NE | 522 | 6.9 | 194 | 2.6 | 315 | 9.8 | 8 | - | 5 | - |
| ND | 163 | 14.5 | 4 | - | 153 | 14.3 | 0 | - | 6 | - |
| SD | 231 | 12.2 | 71 | 12.2 | 154 | 11.0 | 1 | - | 5 | - |
| **9th** | **33,979** | **6.8** | **9,924** | **4.5** | **21,455** | **7.2** | **2,258** | **16.5** | **342** | **31.6** |
| AK | 388 | 4.7 | 11 | 2.0 | 372 | 4.7 | 0 | - | 5 | - |
| AZ | 2,145 | 8.8 | 118 | 2.0 | 1,657 | 8.0 | 347 | 14.9 | 23 | 36.4 |
| CA,N | 6,048 | 7.5 | 2,713 | 5.4 | 2,347 | 6.7 | 939 | 16.8 | 49 | 27.8 |
| CA,E | 2,702 | 11.4 | 1,035 | 6.8 | 1,589 | 13.5 | 65 | 24.6 | 13 | 48.0 |
| CA,C | 12,719 | 4.6 | 3,377 | 3.4 | 9,082 | 5.3 | 121 | 22.1 | 139 | 27.0 |
| CA,S | 1,987 | 7.4 | 513 | 3.4 | 956 | 7.5 | 493 | 14.4 | 25 | 45.1 |
| HI | 503 | 8.0 | 211 | 4.4 | 266 | 10.6 | 18 | 28.8 | 8 | - |
| ID | 390 | 11.2 | 27 | 1.9 | 290 | 10.2 | 69 | 22.6 | 4 | - |
| MT | 374 | 11.4 | 114 | 6.8 | 139 | 9.1 | 111 | 18.1 | 10 | 21.5 |
| NV | 2,113 | 8.1 | 886 | 7.0 | 1,142 | 8.6 | 68 | 14.4 | 17 | 42.1 |
| OR | 1,494 | 12.7 | 301 | 7.1 | 1,169 | 14.0 | 5 | - | 19 | 35.7 |
| WA,E | 775 | 9.0 | 99 | 7.8 | 660 | 8.8 | 6 | - | 10 | 28.6 |
| WA,W | 2,297 | 6.8 | 504 | 4.1 | 1,762 | 7.2 | 12 | 21.9 | 19 | 37.6 |
| GU | 20 | 13.1 | 5 | - | 12 | 8.7 | 3 | - | 0 | - |
| NMI | 24 | 14.0 | 10 | 13.4 | 12 | 13.6 | 1 | - | 1 | - |
| **10th** | **7,312** | **9.8** | **1,676** | **6.1** | **4,818** | **9.9** | **720** | **16.1** | **98** | **29.8** |
| CO | 2,572 | 8.8 | 739 | 7.1 | 1,700 | 8.7 | 98 | 21.1 | 35 | 33.5 |
| KS | 976 | 8.2 | 171 | 4.3 | 703 | 8.0 | 90 | 20.6 | 12 | 23.4 |
| NM | 829 | 11.7 | 83 | 2.4 | 438 | 10.5 | 301 | 14.3 | 7 | - |
| OK,N | 511 | 11.3 | 19 | 4.3 | 489 | 11.4 | 2 | - | 1 | - |
| OK,E | 300 | 15.3 | 18 | 2.7 | 273 | 15.6 | 4 | - | 5 | - |
| OK,W | 839 | 9.7 | 301 | 6.0 | 356 | 10.1 | 169 | 12.6 | 13 | 27.9 |
| UT | 1,073 | 11.0 | 238 | 5.9 | 811 | 12.4 | 11 | 45.7 | 13 | 53.7 |
| WY | 212 | 10.7 | 107 | 9.9 | 48 | 6.0 | 45 | 15.8 | 12 | 20.1 |
| **11th** | **115,393** | **19.7** | **36,480** | **19.6** | **76,598** | **19.9** | **2,091** | **12.4** | **224** | **27.8** |
| AL,N | 1,435 | 10.0 | 176 | 5.1 | 1,234 | 10.5 | 9 | - | 16 | 32.0 |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| AL,M | 526 | 13.6 | 30 | 6.8 | 474 | 13.4 | 10 | 31.4 | 12 | 28.5 |
| AL,S | 436 | 11.6 | 46 | 3.4 | 371 | 11.6 | 11 | 16.7 | 8 | - |
| FL,N | 78,579 | 23.2 | 23,320 | 26.3 | 55,240 | 22.5 | 6 | - | 13 | 26.7 |
| FL,M | 6,746 | 6.2 | 112 | 5.2 | 6,200 | 5.7 | 389 | 14.7 | 45 | 28.5 |
| FL,S | 18,906 | 0.0 | 11,845 | 0.0 | 6,961 | 3.5 | 26 | 11.3 | 74 | 24.3 |
| GA,N | 7,470 | 10.8 | 522 | 2.8 | 5,276 | 13.9 | 1,632 | 11.5 | 40 | 29.2 |
| GA,M | 709 | 9.2 | 206 | 6.5 | 487 | 9.6 | 4 | - | 12 | 31.3 |
| GA,S | 586 | 9.5 | 223 | 7.1 | 355 | 10.3 | 4 | - | 4 | - |

NOTE: Median time intervals are not computed when fewer than 10 cases reported. This table excludes land condemnations, prisoner petitions, deportation reviews, recovery of overpayments, and enforcement of judgments. Includes cases filed in previous years as consolidated cases that thereafter were severed into individual cases. For fiscal years prior to 2001, this table included data on recovery of overpayments and enforcement of judgments.